## SALEM LAFLIN *versus* CALVIN WILLARD.

A creditor attached the interest of his debtor in real estate, consisting of a home stead and of a woodlot, which were under mortgage to different persons; the debtor subsequently mortgaged the homestead to W., and another creditor then attached the interest of the debtor in the real estate ; and the executions of both creditors were delivered to the officer at the same time. The officer levied the first creditor's execution on the equity of redemption in the woodlot, and in consequence the second creditor's execution remained unsatisfied. It was *held*, that the officer was not bound, in the absence of special directions, to levy the execution of the first attaching creditor on the equity of redemption in the homestead, without regard to the claims of W., in order that the equity in the woodlot might be left to be applied in satisfaction of the other execution.

Although the execution creditor may have sustained no damage in consequence of a neglect on the part of the officer to return an unsatisfied execution, he is nevertheless entitled to recover nominal damages of the officer; for where there is a neglect of duty, the law presumes that damages have been sustained.

THIS was case against the sheriff of this county, for the default of Lemuel Dunbar, one of his deputies.

At the trial, before *Shaw* C. J., it appeared that on May 29, 1829, John Fitz was tne owner of two distinct parcels of real estate, designated respectively as the homestead, and the woodlot and meadow ; that botn parcels were under mortgage ; that on that day, Clement and Smitn, two creditors of Fitz, attached his interest in the real estate ; that after these attach ments, the homestead was mortgaged by Fitz to William

S. Wells, to secure the payment of the sum of $600; that on May 30, 1829, and subsequently to the mortgage to Wells, the interest of Fitz in the real estate was again attached, first by Stone and then by the plaintiff, who were both creditors of Fitz; that the executions in the four actions were delivered to the deputy, Dunbar, at the same time and within thirty days after the rendition of judgment, without any special directions as to the mode of serving them or applying the proceeds of the property attached.

It appeared by the officer's returns, that he sold the equity of redemption in the woodlot and meadow on Clement's execution, for the sum of $160, and after satisfying that execution applied the balance, amounting to the sum of $66·75, towards the satisfaction of Smith's execution; that he sold the equity of redemption in the homestead on Smith's execution and having appropriated the sum of $9·41, in satisfaction thereof, applied the residue of the proceeds, amounting to the sum of $433·97, to the payment of the mortgage of Wells.

By this mode of selling and applying the proceeds, the plaintiff and Stone obtained nothing on their executions. Whereas, if the officer had satisfied the executions of Smith and Clement out of the proceeds of the equity of redemption in the homestead, this would have left the proceeds of the sale of the equity in the woodlot and meadow, to be applied in satisfaction of the executions of Stone and the plaintiff.

It further appeared, that the officer did not return the plaintiff's execution till more than a year after the return day, but that he did return it before this action was brought. The plaintiff contended, that this was a breach of duty for which he was entitled to recover nominal damages, even if he had sustained no actual damage thereby.

A nonsuit was entered, subject to the opinion of the Court upon these facts.

If the Court should be of opinion, that the plaintiff was entitled to recover, the nonsuit was to be taken off, and the defendant was to be defaulted, and judgment rendered for such sum as the Court should order, or as should be reported by an assessor.

*Merrick* and *Isaac Davis*, for the plaintiff. The officer was

Laflin
*v.*
Willard.

*Oct. 4th.*

the agent of the attaching creditors and not of Wells, the mortgagee, and was therefore bound so to levy the executions as to satisfy all, without regard to the claims of Wells. *Bacon* v. *Leonard*, 4 Pick. 277.

The plaintiff is at least entitled to recover nominal damages for the neglect of the officer in not returning the execution for more than a year after the return day. *Waterhouse* v. *Waite*, 11 Mass. R. 207 ; *M'Gregor* v. *Brown*, 5 Pick. 170 ; *Ladd* v. *Blunt*, 4 Mass. R. 402 ; *Sullivan* v. *M'Kean*, 1 N. Hamp. R. 371 ; *Burk* v. *Campbell*, 15 Johns. R. 456 ; *Hinman* v. *Brees*, 13 Johns. R. 529.

*Newton* and *Child*, for the defendant, to the point, that the prior attaching creditors had a right to elect on which equity their executions should be levied respectively, and that the plaintiff could not prevent such election, cited *Parker* v. *Dennie*, 6 Pick. 227 ; that it was the duty of the officer to pay over the residue of the proceeds of the sales, in satisfaction of the mortgage of Wells, *Clark* v. *Austin*, 2 Pick. 528 ; *Bacon* v. *Leonard*, 4 Pick. 277 ; and that the plaintiff was not entitled to recover any damages for the neglect of the officer in regard to the return of the execution, Com. Dig. *Retorn F* 1, cites 2 Inst. 452 ; 3 Dane's Abr. 91, 92.

*Wilde* J. delivered the opinion of the Court. The principal question raised at the trial and reserved for the consideration of the Court is, whether the officer receiving the four executions, named in the report of the case, was bound, in the absence of special directions, so to sell the equities attached on mesne process, and so to apply the proceeds, if he could, as to satisfy all the executions, without regard to the claims of the mortgagee, who had obtained a lien on the property prior to the two last attachments. And we are all of opinion, that the law imposes no such obligation on an officer. Whether, if the officer had received directions so to do from the plaintiff, he would have been bound by them, is not the question. It is clear however that no such directions would be obligatory on the officer, if directions to the contrary had been given by the previously attaching creditors. Whether the officer acted under the directions of the first attaching creditors or not, does not appear ; and it is imma

terial; for however this may have been, the officer was not bound so to levy the first executions as to give a preference to the plaintiff, rather than to the mortgagee, without special directions so to do. It does not appear that the officer had before the sale of the equities, and satisfaction of Clement's and Smith's executions, any knowledge that the mortgage to Wells only covered the homestead, and he was not bound to inquire. So that if the plaintiff had the right to direct the order of levying the executions, which, however, is not admitted, he should have given special directions to the officer, communicating to him all the material facts, so that he might act understandingly, and not be left to grope his way in the dark, and to act at his peril

In *Bacon* v. *Leonard*, 4 Pick. 277, it was decided, that where a mortgager had assigned his equity after it was attached, and the officer afterwards sold it upon the attaching creditor's execution, which was satisfied by part of the proceeds, the officer was not liable, without notice of the assignment, for applying the surplus in satisfaction of another execution against the mortgager. " For it was not the duty of the officer," as is said in that case, " to search the records, to see if any conveyance had been made of the equity, which would supplant any execution in his hands." And so in the present case, it was not the officer's duty, before levying the two first attaching creditors' executions, to inquire as to the mortgage. The officer therefore is not responsible for levying these two executions in the manner he did, and consequently is not answerable for paying over the surplus to the mortgagee. *Clark* v. *Austin*, 2 Pick. 528.

The plaintiff, however, is entitled to nominal damages, for the officer's neglect in not returning the execution until long after the return day. No actual damages are proved; but where there is a neglect of duty the law presumes damages.

The defendant, therefore, according to the agreement of the parties, is to be defaulted, and the plaintiff is to have judgment for nominal damages.